Argued and submitted April 12, reversed and remanded for reconsideration
July 11, 2007

FORT VANNOY IRRIGATION DISTRICT
and Herman Baertschiger, Jr.,
*Petitioners,*

*v.*

WATER RESOURCES COMMISSION
and Ken-Wal Farms, Inc.,
aka Fort Vannoy Farms, Inc.,
*Respondents.*

Oregon Water Resources Commission
T8366; A130508

162 P3d 1066

Emil R. Berg argued the cause and filed the briefs for petitioners.

Denise G. Fjordbeck argued the cause for respondent Water Resources Commission. With her on the brief were

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Brendan C. Dunn, Assistant Attorney General.

Ross Day argued the cause for respondent Ken-Wal Farms, Inc. With him on the brief was Oregonians In Action Legal Center.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

This is a petition for review of a final order of the Water Resources Commission (the commission) upholding the Water Resources Department's approval of the application of Ken-Wal Farms, Inc. (applicant). Applicant sought to modify the water rights of five water rights certificates for irrigation of applicant's farm from the Rogue River and its tributaries by consolidating seven points of water diversion within the Fort Vannoy Irrigation District (the district) into two points of diversion outside of the district's control. The district contends that the commission erred in approving the application and seeks a reversal and remand with instructions to disapprove the application. We review pursuant to ORS 183.482 and reverse and remand the commission's order.

Applicant owns property within the district just outside of Grants Pass and draws water for irrigation from the Rogue River and its tributary, Vannoy Creek. Applicant filed an application with the department to consolidate seven water diversion points within the district's system to two diversion points on applicant's land that are beyond the district's control. Applicant owns the land appurtenant to the diversion points that it proposed to change and three of the five water right certificates (certificates 3247, 15340, and 2803). The two remaining certificates (8942 and 8943) are in the district's name, and the points of diversion relating to those certificates are the subject of this petition. The district did not consent to or join in the transfer request. There are no allegations that the proposed changes will result in injury to existing water rights. The department approved applicant's request. The district objected to the proposed changes, asserting that, as owner of certificates 8942 and 8943, it is the holder of the water use subject to transfer under those certificates and a necessary party to any application regarding a change in diversion points under those certificates.

An administrative law judge (ALJ) from the Office of Administrative Hearings conducted the hearing and prepared a proposed order under OAR 137-003-0580(6), rejecting the district's challenge.[1]

---

[1] OAR 137-003-0580(6) establishes a procedure equivalent to summary judgment in contested cases before the Office of Administrative Hearings. Under that

In its final order, the commission also rejected the district's challenge. The commission acknowledged that "[t]he issue of ownership of a water right within an irrigation district is a recurring question." It determined, however, that it did not need to decide whether either the district or applicant "owns" the water rights subject to the district's two certificates. Rather, the commission reasoned, to resolve the question of the necessity of the district's approval, it was necessary only to refer to the statutes and administrative rule setting forth the requirements for a change in a diversion point, and, the commission concluded, those provisions do not require a water district's approval of a change in a diversion point.

ORS 540.510 provides that the "holder of any water use subject to transfer" may apply to the department to transfer or change the use, place of use, or diversion point of the water. Under ORS 540.505(4), "water use subject to transfer"

"means water use established by:

"(a)  An adjudication under ORS chapter 539 as evidenced by a court decree;

"(b)  A water right certificate;

"(c)  A water use permit for which a request for issuance of a water right certificate under ORS 537.250 has been received and approved by the Water Resources Commission under ORS 537.250; or

"(d)  A transfer application for which an order approving the change has been issued under ORS 540.530 and for which proper proof of completion of the change has been filed with the Water Resources Commission."

ORS 540.520(1) provides that "whenever the holder of a water use subject to transfer" desires to apply for a transfer, the holder shall submit an application to the department. ORS 540.520(2)(a) provides that the application shall include:

---

rule, if the pleadings, affidavits, supporting documents, and the record in a contested case show that there is no genuine issue as to any material fact and that the party filing the motion is entitled to a favorable ruling as a matter of law, then the matter can be resolved by summary determination.

"(a) The name of the owner;

"(b) The previous use of the water;

"(c) A description of the premises upon which the water is used;

"(d) A description of the premises upon which it is proposed to use the water;

"(e) The use which is proposed to be made of the water;

"(f) The reasons for making the proposed change; and

"(g) Evidence that the water has been used over the past five years according to the terms and conditions of the owner's water right certificate or that the water right is not subject to forfeiture under ORS 540.610."

The department's applicable administrative rule, OAR 690-015-0060(13) (1999), provided, additionally, that the application shall include the

"[n]ame of deeded owner of the land to which the water right is appurtenant. A copy of the recorded deed to the subject lands shall accompany the application. If the applicant is not the deeded owner, the applicant shall provide a notarized and signed statement from the deeded owner authorizing the change."

If the proposed change can be effected without injury to existing water rights, the commission is required to approve the transfer and fix a time limit within which the approved changes must be completed. ORS 540.530(1).

The commission noted that applicant is the owner of the land appurtenant to the water rights under certificates 8942 and 8943. Although the commission did not address the issue,[2] it appears to have reasoned that, as the owner of the appurtenant land, applicant is the "holder of a water use subject to transfer" under ORS 540.520 and entitled to seek a change in the diversion point for the water use. Explaining

---

[2] The ALJ's order stated,

"As water rights are, in the West, essentially defeasible usufructary rights attached to specifically identified land rather than personal rights which may be exercised at any location and only by the individual whose name is on the certificate evidencing that right, it is logical to conclude that the 'holder' of the right referred to in ORS 540.520 is the owner of the land to which the right is appurtenant."

that there is no requirement in ORS 540.510, ORS 540.520, or OAR 690-015-0060 for an irrigation district's consent to a transfer of a diversion point within the district, the commission concluded that the district's possible ownership of the water rights under certificates 8942 and 8943 is immaterial, because, under the statute and rule, only the appurtenant landowner, and not the irrigation district, must consent to a change in a diversion point:

> "[U]nder the applicable rules and statutes the only permission that is required is that of the owner of the land to which the water right is appurtenant. There is no support in the text and context of the rules and statutes for [the district's] claim that an applicant within an irrigation District who applies to the Department for a change in point of diversion must also receive the permission of the irrigation district. To the contrary, the statutory scheme specifically identifies when and where an irrigation district is authorized to act on transfers and when district permission to make a transfer is necessary, highlighting the absence of such a requirement for a standard transfer application under ORS 540.520.

> "Throughout ORS chapter 540 the legislature provided for district participation in and authorization of specific types of transfers. For example, districts are authorized to initiate permanent or temporary changes of place of use within district boundaries, but a district must obtain the landowner's consent to the transfer. ORS 540.570 to ORS 540.580. Where a landowner has not used a water right for four years, a district, after the fourth year of non use, may petition to transfer the water right to a different place of use within the district boundaries. ORS 540.572. If an owner wants to temporarily transfer a water right to alternate acreage within a district, the owner must obtain the district's consent. ORS 540.570(2).

> "The above statutes demonstrate that the legislature recognized a district's interest in moving water around within a district's boundaries and provided for district participation and authorization for transfers to alternate acreage within the district boundaries. There are no provisions for district authorization of other types of transfers initiated by district landowner/patrons with appurtenant water rights. The specificity with which irrigation district participation in transfers is set out, clearly indicates that if the

"legislature had intended to require irrigation district approval of standard transfer applications it would have done so. To read a requirement of irrigation district approval into a transfer application under ORS 540.520 would be contrary to the legislative intent to limit district participation, as evidenced by the statutory text and context, and contrary to the directive in ORS 174.010 not to insert what has been omitted."

In reasoning that the provisions for transfer applications do not require district authorization, the commission sidestepped the question whether the district itself, as the owner of the certificates, is the entity that must seek a transfer of a diversion point under those certificates.

The district seeks judicial review and continues to assert that an irrigation district in whose name a water right certificate is issued is both the owner and holder of the water use and the entity that must seek a transfer of that water use under ORS 540.510. The district claims that, as the owner of the water rights granted by certificates 8942 and 8943, it is the only entity entitled to seek a change in the diversion point identified in those certificates. Applicant adheres to the position taken before the commission that, as the owner of the appurtenant land, applicant is the "holder of a water use subject to transfer" under ORS 540.510 and entitled to seek a change in the diversion point, and that the district's consent is not required.

We have previously concluded, in *Russell-Smith v. Water Resources Dept.*, 152 Or App 88, 94, 952 P2d 104, *rev den*, 327 Or 173 (1998), that the holder of a water right certificate is the entity that must seek a change in the diversion point:

"It is clear that, under ORS 540.520, a certificate holder who wishes to change the [diversion point] designated in the certificate shall file an application with the Water Resources Department."

That case, however, did not involve certificates held by an irrigation district, and so it did not address the precise issue raised on this review. The parties are correct that the issue is one of statutory interpretation.[3]

---

[3] The district also asserts that applicant has not used the waters authorized under certificates 3247, 15340, and 2803 in accordance with terms and conditions

We begin with the text of the statute and its context. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (describing analytical method for construing statutes). As previously noted, under ORS 540.510, the "holder of any water use subject to transfer" may apply to the department to transfer or change the use, place of use, or point of diversion of the water. ORS 540.505 provides that a "water use subject to transfer" is established by, among other means, a water right certificate. The certificates in the district's name provide expressly that the district "has made proof to the satisfaction of the STATE ENGINEER of Oregon, of a right to the use of the waters." (Uppercase in original.) Thus, it would appear, based on the certificates, that the district is the holder of the right to use of the water subject to the certificates. Applicant, in turn, also holds water right certificates, but those certificates do not cover the diversion points applicable to the district's certificates. Although ORS 540.510 refers to "the holder of *any* water use subject to transfer" (emphasis added), ORS 540.520 provides that an application can be made by "*the* holder of a water use subject to transfer * * * to change the place of use, the point of diversion, or the use made of *the* water." (Emphasis added.) It would seem, as a matter of sentence structure, logic, and innate fairness, that the requested change must relate to the holder's own interest. On the face of ORS 540.510 and ORS 540.505, applicant is not the holder of a water use subject to transfer as established by one of the means listed in ORS 540.505 with respect to certificates 8942 and 8943.

■ The commission contends, however, that the term "holder" is inexact, and the commission's construction—that the "holder" is the appurtenant landowner—deserves our deference. We agree with the commission that, if the meaning of the term is not self-evident, it is inexact, because it is open to interpretation. *Karjalainen v. Curtis Johnston & Pennywise, Inc.*, 208 Or App 674, 681, 146 P3d 336 (2006), *rev den*, 342 Or 473 (2007) (a term is "inexact" where its meaning is "not so precise as to require no interpretation at all"). In

of the certificates over the last five years, which is another prerequisite for a change in diversion points. ORS 540.520(1)(g). In light of our conclusion that only the district could request a change in the diversion point at issue, we do not address that argument.

any case, the meaning of the term is a question of law, accomplished by applying the ordinary rules of statutory construction, and we review the commission's interpretation "as a matter of law to determine whether the agency's action effectuated the legislative policy, as evidenced by the text and context of the statute." *J. R. Simplot Co. v. Dept. of Agriculture*, 340 Or 188, 197, 131 P3d 162 (2006).

The term "holder" as used in ORS 540.510 is not defined. As a term of common usage, we give the word its common meaning, *Smurfit Newsprint Corp. v. Dept. of Rev.*, 329 Or 591, 597, 997 P2d 185 (2000) ("At the first level of analysis we examine the text and context, giving words of common usage their plain, natural, and ordinary meaning."), unless there is clear evidence that the legislature intended some other meaning, *see, e.g.*, *Wyatt v. Body Imaging, P.C.*, 163 Or App 526, 533, 989 P2d 36 (1999), *rev den*, 330 Or 252 (2000) ("[W]e begin with [statutory text], giving the textual terms their ordinary meanings, unless the statutes or their contexts make clear that a different meaning was intended."). As defined in *Webster's Third New Int'l Dictionary* 1079 (unabridged ed 2002), a "holder" is "one that holds something; as **a (1) :** POSSESSOR, OWNER * * * : one who holds any estate in land **:** a person in constructive possession of land having the right of immediate possession thereto which he can exercise without hindrance." Thus, in common usage, a "holder" of a water use is one who holds a possessory or ownership interest in the use of the water. There is no text or context that suggests a different meaning. ORS 540.505 describes the various interests that give rise to a transferable water use. Under the common meaning of the term "holder," the district, as the owner of water rights evidenced by certificates 8942 and 8943, is the holder of the use of the water subject to transfer under those certificates.

Provisions relating to the issuance of water rights certificates also make clear that an entity in whose name a water right certificate is issued is the owner of the right to use of the water. ORS 537.250 provides:

"(1) After the Water Resources Department has received a request for issuance of a water right certificate accompanied by the survey required under ORS 537.230(4)

that shows, to the satisfaction of the department, that an appropriation has been perfected in accordance with the provisions of the Water Rights Act,[4] the department shall issue to the applicant a certificate of the same character as that described in ORS 539.140. The certificate shall be recorded and transmitted to the applicant as provided in that section.

"(2)   When issuing a water right certificate under subsection (1) of this section in the name of a district as defined in ORS 540.505 * * * the department may issue the water right certificate for land not described in the permit in accordance with ORS 537.252.

"(3)   Rights *to the use of water* acquired under the provisions of the Water Rights Act, as set forth in a certificate issued under subsection (1) of this section, shall continue in the owner thereof so long as the water shall be applied to a beneficial use under and in accordance with the terms of the certificate[.]"

(Emphasis added.) The owner of the certificate is also the owner of the right to use the water.

■      Most often, the owner of the certificate will be the owner of the land to which the water is appurtenant. However, irrigation districts are also expressly authorized to acquire, condemn, own, hold, and transfer property and water rights. ORS 545.239(1).[5] ORS 545.253 provides that, "[t]he legal title to all property acquired under ORS 545.239, 545.241, 545.245 and 545.249 shall immediately vest in the irrigation district and shall be held by it in trust for and hereby is dedicated and set apart to the uses and purposes set forth in the Irrigation District Law."[6] The right to condemn

---

[4] ORS 537.010 provides:

"As used in this chapter, 'Water Rights Act' means and embraces ORS 536.050, 537.120, 537.130, 537.140 to 537.252, 537.390 to 537.400, 538.420, 540.010 to 540.120, 540.210 to 540.230, 540.310 to 540.430, 540.505 to 540.585 and 540.710 to 540.750."

[5] ORS 545.239(1) provides, in part:

"The [irrigation district] board also has the right to acquire, by lease, purchase, condemnation or other legal means, all lands, water, water rights, rights of way, easements and other property, including canals and works and the whole of irrigation systems or projects constructed or being constructed by private owners, necessary for the construction, use, supply, maintenance, repair and improvement of any canals and works proposed to be constructed by the board."

[6] We note, additionally, that ORS 537.099 provides:

property and water for irrigation of lands in the district is considered to be a public use "more necessary and more beneficial than any other use, either public or private, to which the water, water rights, rights to appropriate water, lands or other property have been or may be appropriate within the district." ORS 545.249. Although the use of water generally must "remain appurtenant to the premises upon which it is used," ORS 540.510, an exception exists for water uses under a permit or certificate issued to an irrigation district, which "may be applied to beneficial use on lands within the district to which the right is not appurtenant." ORS 540.510(4); *see also* ORS 537.250 ("When issuing a water right certificate under subsection (1) of this section in the name of a district as defined in ORS 540.505 * * * the department may issue the water right certificate for land not described in the permit in accordance with ORS 537.252."). Thus, an irrigation district is authorized by law to own water rights for use other than on appurtenant land, and its right to use of the water within the district is considered to be superior to the use of appurtenant landowners.

For all the above reasons, we conclude that the text of ORS 540.510 and its context require the conclusion that an irrigation district holding a water right certificate is the "holder of a water use subject to transfer" and is the entity authorized to seek a change in the diversion point with respect to that certificate.[7] Conversely, the appurtenant landowner is not the holder of a water use subject to transfer unless the landowner is also the owner of an interest described in ORS 540.505.[8]

---

"(1) Except as provided in subsection (3) of this section, any governmental entity that *holds* a water right shall submit an annual water use report to the Water Resources Department. * * *

"(2) As used in this section, 'governmental entity' includes any state or federal agency, local government as defined in ORS 294.004, irrigation district formed under ORS chapter 545 and a water control district formed under ORS chapter 553."

(Emphasis added.)

[7] Indeed, in 1962, the district filed an application to change the diversion point under certificate 8942, which the State Engineer allowed. At the time, ORS 540.510 provided that the State Engineer had the authority to approve a transfer request made by the "holder" of the water right.

[8] We note, however, that OAR 690-015-0060(13) (1999) would require the district to seek the authorization of the deeded owner of the land appurtenant to the water right. Further, if an irrigation district were to seek a change in a diversion

The commission notes that ORS 540.510 provides that "a district may change the place of use in the manner provided in ORS 540.572 to 540.580 in lieu of the method provided in ORS 540.520 to 540.530." ORS 540.572 to 540.580 in turn set forth procedures by which a district can seek a change of place of use of certificated water rights from non-irrigated land to other irrigable land within the district. Those provisions allow the district to seek a change in the place of use of water within the district of water rights held by landowners within the district. In the commission's view, because those provisions expressly set forth rules relating to a district's ability to seek a change in place of use under the circumstances described, those provisions necessarily set forth the only circumstances in which a district may seek a change. There are many reasons why that is not a correct interpretation of ORS 540.510, but we address only one: ORS 540.510 provides that a district *may* seek to make changes in place of use pursuant to ORS 540.572 to 540.580 *in lieu of the method provided in* ORS 540.520 to 540.530. By the unambiguous text, the choice is the district's. It may seek to make a change under the provisions of ORS 540.510, if it is the holder of the water use subject to transfer, or it may use the alternate procedures of ORS 540.572 to 540.580 if they apply.

We conclude that an irrigation district in whose name a water right certificate is issued is the holder of a water use subject to transfer and may seek a change in a diversion point under that certificate under ORS 540.510. We further conclude that the district, not applicant, is the holder of the water use subject to transfer with respect to certificates 8942 and 8943. We therefore reverse and remand the commission's order changing the diversion points for certificates 8942 and 8943.

Reversed and remanded for reconsideration.

---

point and the change could not be effected without injury to existing water rights, the commission could approve the change only with the consent of "every holder of an affected water right." ORS 540.530.